# UNITED STATES DISTRICT COURT

for the

Eastern District of North Carolina

Eastern Division

| | | |
|---|---|---|
| **CYNTHIA ANDERSON** | ) | Case No. 4:23-cv-115 |
| | ) | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) | |
| (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | ) | Jury Trial: *(check one)* ✔ Yes ☐ o |
| -v- | ) | |
| **Amazon.com Services LLC** | ) | |
| *Defendant(s)* | ) | |
| (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | ) | |

# AMENDED
## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Cynthia G. Anderson |
| Street Address | 452 Lynch's Beach Loop |
| City and County | Bayboro  Pamlico |
| State and Zip Code | NC |
| Telephone Number | 704-258-8025 |
| E-mail Address | cgander11@gmail.com |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1
    Name: Amazon.com Services LLC
    Job or Title (if known): c/o CT Corporation Service Co.
    Street Address: 2626 Glenwood Ave, Ste 550
    City and County: Raleigh (Wake County)
    State and Zip Code: NC 28608
    Telephone Number:
    E-mail Address (if known):

Defendant No. 2
    Name:
    Job or Title (if known):
    Street Address:
    City and County:
    State and Zip Code:
    Telephone Number:
    E-mail Address (if known):

Defendant No. 3
    Name:
    Job or Title (if known):
    Street Address:
    City and County:
    State and Zip Code:
    Telephone Number:
    E-mail Address (if known):

Defendant No. 4
    Name:
    Job or Title (if known):
    Street Address:
    City and County:
    State and Zip Code:
    Telephone Number:
    E-mail Address (if known):

**C.  Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Amazon.com Services LLC |
| Street Address | 535 Terry Ave. N |
| City and County | Seattle |
| State and Zip Code | WA  98109 |
| Telephone Number | |

## II.  Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑  Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑  Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐  Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑  Other federal law *(specify the federal law)*:
**42 U.S.C. 1981 and Family Medical Leave Act (FMLA) (retaliation)**

☐  Relevant state law *(specify, if known)*:

☐  Relevant city or county law *(specify, if known)*:

### III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [ ] Failure to hire me.
- [x] Termination of my employment.
- [ ] Failure to promote me.
- [ ] Failure to accommodate my disability.
- [x] Unequal terms and conditions of my employment.
- [x] Retaliation.
- [x] Other acts *(specify)*: Constructive Discharge - they refused to take prompt remedial act

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)
beginning July 22, 2021, and continuing through my date of resignation effective October 1, 2021

C. I believe that defendant(s) *(check one)*:
- [x] is/are still committing these acts against me.
- [ ] is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:
- [x] race
- [x] color
- [ ] gender/sex
- [ ] religion
- [ ] national origin
- [x] age *(year of birth)* 1964 *(only when asserting a claim of age discrimination.)*
- [ ] disability or perceived disability *(specify disability)*

E. The facts of my case are as follows. Attach additional pages if needed.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

See attached Charge dated January 11, 2022  **Exhibit 3**

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)* 04/12/2023 .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*  **Exhibit 4**

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.
☐ less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Reinstatement, back pay, compensatory and pumnitive damages, lost benefits and seniority, attorney's fees.

1. On May 6, 2019, I was hired as Operations Manager by Amazon in the Consumer Division overseeing the online grocery department also known as (F3 or "Fresh Food Fast").

2. My salary was $160,000 and I received a signing bonus which was paid monthly over a two year period.

3. I was hired by Sasha Kosmowski, who was the U.S. senior site manager of Consumer which is considered customer service.

4. Amazon has a process called "skip levels" which are considered quarterly feedback sessions for all managers. Managers are supposed to conduct these feedback sessions with their direct reports. They are supposed to be documented but, in my experience, they were not always documented.

5. The purpose of these sessions is to find something that the employee can work on to improve and to find out if the employee believes things are going well or whether something about the work situation needs changing. It can be a group collaborative process, or it can be done on an individual basis with an employee one-on-one, depending on the circumstances.

6. In January 2020, I received a formal evaluation from Sasha Kosmowski, which was good.

7. On February 8, 2020, I and my team joined the Shipping and Delivery ("SDS") group led by Senior Manager Brion Nelson from Consumer. We were the only group that was new to SDS. Everyone else working for Brion Nelson were legacy employees who had established relationships with each other and with Brion Nelson.

8. The original plan was to get rid of "back up" work groups so that we could use our core primary employees with the appropriate training and knowledge, skills, and abilities to

answer customer inquiries regarding delivery of scheduled grocery orders within the Amazon U.S. fresh food business, and therefore meet service level expectations.

9. The individuals in workforce management are responsible for managing service levels to ensure that 80-90% of the calls received by Amazon should be answered within 30 seconds.

10. The individuals in capacity planning are supposed to ensure that there are enough employees working ("head count") so that there are enough workers to meet the service levels agreements.

11. The pandemic began in March 2020 and the work that my team did became very, very difficult and challenging. The fresh food business was always more challenging than other produce areas due to the complexity of delivery windows set by the Program Managers. These delivery windows in the U.S. meant that whether or not the food order was delivered on the same day, if the specific window of delivery (e.g., 2pm-4pm) was not met, the delivery was considered a complete miss. Ninety percent of the time this "miss" was due to circumstances outside the control my team but we were tagged with it.

12. In addition, fresh food delivery was a critical business function because the consumer division was transitioning from a focus on customer service to a focus on shipping and delivery. The fresh food business had unprecedented demands on it because of the pandemic.

13. For the first three months after the transition between February and the end of April, my particular business, focused on timely delivery of fresh food, missed expected service levels for the first time since I joined the company,

14. The service levels were not met because our seasonal employees were released at the end of their assignments in February. We had no idea that the seasonal employees were

leaving. This was a failure of communication within Amazon between workforce management and capacity planning and our division.

15. In addition, delivery success rate ("DSR") and consumer success rate ("CSR") were key performance indicators for F3. However, F3 had no control over the delivery success rate if the delivery was not made on time and the consumer was dissatisfied and this occurred often because the seasonal employees had been let go in February.

16. Again, these key performance indicators were not met because workforce management and capacity planning did not communicate to anyone that the seasonal employees that handled 70% of Amazon's back up call volume were released (laid off) the same week of the transition from customer service to shipping and delivery service.

17. The vacancies that were left by the release of the seasonal employees meant the non-seasonal employees could not handle the call volume and thus service levels could not be met.

18. Amazon decided to fill the gap with workers who were part of shipping and delivery services, but those employees shifted around did not have sufficient knowledge, skills, and abilities (KSA) or the opportunity to be trained quickly enough to pick up the overflow of work demanded.

19. In my division (F3), I lost a lot of experienced and trained employees who were reassigned to other parts of the business of shipping and delivery in order to meet the demands for those businesses.

20. My team researched why we were not meeting key performance indicators and my staff performed deep dives into data collected to determine why the DSR and CSR rates had declined and why the service levels were not being met.

21. Between February and August and after that time, the entire company was scrambling to hire and assign enough employees to meet the service levels, DSR and CSR expectations. There was a lot of pressure on me and everyone on my team.

22. Brion Nelson was my manager until August 2020. When he came to me with questions about various matters sometimes with very short deadlines, I had to go to my team and ask them to do extra work and find answers to the questions. I shared with my team the deadlines imposed on me and explained to them why I was imposing the deadlines on them.

23. My staff shared feedback during skip levels with Brion Nelson that they felt I was imposing unrealistic deadlines. I took that feedback, knowing that sometimes there was nothing I could do about the deadlines, and I then began to ask them what a reasonable deadline was before assigning them a task.

24. In addition, we began tracking the factors over which we had no control, and which seemed to be affecting our ability to meet our key performance indicators. By the end of the year, we were able to address the "uncontrollables" and change the key performance indicators on which we would be evaluated in the future. This however did not change the fact that we had missed the service levels and performance indicators for the 2020 calendar year.

25. Ashley Pringle who was my peer during this time also failed to meet the key performance indicators while we worked together in F3. In some areas, I actually outperformed her during this time period. F3 was the only business that had two senior managers working in it, Ashley Pringle and myself, and this was because of the critical nature of the business involving the delivery of fresh food.

26. F3 was compared to other countries even though they did not have same type of delivery challenges that we had in the U.S. In addition, they did not have the team

changes in personnel that we had in the U.S. which also affected our ability to meet key performance indicators and service levels.

27. Ashley Pringle became my supervisor in August 2020. I did not apply for the position because I was new to shipping and delivery and I wanted to work out the rest of the issues that had affected my team's performance since February. Ashley Pringle had pre-existing relationships with individuals in shipping and delivery.

28. On January 22, 2021, we all received an email from Ashley Pringle about Amazon Fresh CS being Rated #1 in 2020.

29. In the email, Ashley Pringle stated:

> "Congratulations Cynthia, Alana, and all that contributed to the GSF3 team is [sic] 2020! This is recognition of the hard work our team does every day! Ashley Pringle"

30. Alana had taken over Ashley's responsibilities when Ashley got promoted and she was not permanent at that time and was a direct report to me.

31. On January 27, 2021, Ashley Pringle gave me a negative performance review which came completely out of the blue. This review was never given to me in writing, only verbally.

32. Neither she nor Brian ever shared any challenges involving my performance with me prior to January 27, 2021. At no time while I was out on FMLA did she provide me with a copy of a performance review where she told me what the reasons for placing me in FOCUS were.

33. In our conversation on January 27, and then on February 3, 2021, Ashley Pringle did not appropriately evaluate me.

34. For example, at Amazon, managers get credit if their reports are promoted within the company; "hire and develop the best" is one of the Amazon leadership principles. In

2020, I had four employees who were promoted – Chris Martin, promoted to a permanent group manager position(reporting to me); John Wolfe, who also became a permanent group manager (reporting to me); and Alana Brecken, who was put in the acting senior manager position after Ashley Pringle was promoted; and Robert Stutzman, reporting to me, who went to an acting group manager position.

35. Amazon stated in its response to my EEOC charge that Brion Nelson observed deficiencies in my work performance and discussed them with me in July 2020. No deficiencies other than my reports' concerns about being given unrealistic deadlines.

36. In addition, if the failure of F3 to meet key performance indicators between February 2020 and August 2020 were significant, they were apparently not serious enough to prevent Ashley Pringle from being promoted because she shared the same failure to meet key performance indicators as the other senior manager in F3, the fresh food business of Amazon.

37. In August 2020, I and my team began reporting to Ashley Pringle who was a White Female.

38. On August 21, 2020, both Brion Nelson and Ashley Pringle met with me to provide me the feedback that Nelson had obtained from the skip levels that he had conducted with my employees. Again, the only negative was that my employees felt that I had put unrealistic deadlines on them and that they would appreciate showing them what "good "looks like. As a result of this feedback, I adjusted my process as described above, but part of having urgent deadlines was the nature of the business we were in, and I could not eliminate it completely; I could only be more sensitive to it.

39. It was clear when Ashley Pringle became my manager that I was not one of her favored employees.

40. Michael Haynes was a favored employee of Ashley Pringle. He had reported to her prior to being promoted to Operations Manager. He was Ashley Pringle's Group Manager and she got credit for him being promoted under her leadership, a process over which she had an enormous amount of influence.

41. Ashley Pringle assigned him this responsibility for making changes to staffing assignments. The managers under Ashley Pringle had a meeting at which we discussed the changes that were being proposed. He presented the changes in a document.

42. He proposed a change which proposed moving one of the only tenured team managers that I had left to another team. When I realized this proposed change, I asked him to bring back this manager to my team because she was the only tenured team manager I had at that time. He then asked me why I did not bring it up at the meeting. I told him that changes were still being made and that I had not realized it at the time until I saw the final list. He accused me of not being a team player.

43. Jay Marcello and Michael Haynes frequently tag-teamed each other. (Neither were African American.) He was also my peer and proposed a change to my team. He gave me two hours to respond but I was on a deadline. When he did not hear from me, he went ahead and made a change to my team and then when I questioned him about this, he also accused me of not being a team player. I pointed out to him that I needed more time to review his request prior to providing a decision given the short notice. When I communicated to Ashley what occurred, she took no action. This was part of the hostility that I felt from the work environment after she became manager.

44. Also, when Ashley Pringle and Brion Nelson were scheduled to be out of the office, I was never selected to be a point of contact. All of my peers had this delegation authority including Michael Haynes, Alana Brekken, Dirk Everidge, Jorge Monge and Yamell

Aguirre Mora, none of whom were African-American. I was the only one who was never selected to be a point of contact in their absence.

45. On or about December 2, 2020, Pringle provided me with the same feedback about unrealistic deadlines which she had been previously provided in August by Nelson.

46. In the response to the EEOC charge, Amazon stated that Pringle told me she had concerns with the performance of the F3 team. She did not. But even if she had done so, as my peer, she had these same performance concerns prior to being promoted and they were not deemed significant enough to keep her from being promoted.

47. After our conversation on January 27, 2021, I was devastated. I had never had a negative evaluation. In addition, the idea that she was placing me in Focus without having given me any specific feedback justifying this action was also terrifying because it mean that HR was not exercising any oversight over her. I feared for my job.

48. I knew that her issues with my performance, if they were true, should have been communicated to me well before January 27, 2021, because I had been working for her since August 2020. In addition, five days before, she had sent an email praising me and my team.

49. I felt intimidated and that my job was being threatened. I believed that the FOCUS plan was part of her attempt to try to get rid of me.

50. Amazon also stated in its response to my charge that I received the lowest performance rating of "Least Effective" ("LE") on my February 2021 Operations Leadership Review ("OLR").

51. On February 1, 2021, I went out on FMLA followed by short disability both due to stress I was experiencing at work resulting from the discriminatory treatment, hostile work environment and due to challenges I was having with my mother at that time.

52. I responded to the conversation that Ashley Pringle and I had on January 27, 2021, and the February 3, 2021, email from Ashley Pringle on February 9, 2021. **Exhibit 1.**

53. Amazon admitted in its position statement that the February 9, 2021, email I sent was a "detailed rebuttal" and that I made it clear that I thought I was being treated differently from other employees.

54. Amazon also admitted that when Pringle got this email, "Pringle immediately escalated the email to Human Resources." Rather than investigate my concerns about discrimination, Amazon says that "[t]he Human Resources Department, however, was not able to investigate because Anderson was already on her leave of absence. The department intended to investigate Anderson's allegations upon her return."

55. Amazon admits it left me in limbo for the entirety of my FMLA/short term disability about whether I would return to the same discrimination that I had experienced prior to my going out on FMLA.

56. I became aware of additional promotions which occurred in early 2021 which included Dirk Everidge, Davendra Garg- Workforce Management and two other Workflow management leaders and Capacity Planning leaders. These individuals who were promoted were directly responsible for the collapse in service levels from February 2020 to April 2020 and these employees were all non-African American employees.

57. At no time did anyone from HR contact me about why I believed I had been subject to disparate treatment while I was out on FMLA and short term disability When I returned on July 6, 2021, no one from HR reached out to me about my February 9, 2021 email.

58. The OLR Prep Form was identified in Amazon's response to my charge of discrimination. It is supposed to be completed for each manager as part of the review process. Amazon stated that in that document, Ashley Pringle identified my strengths

and weaknesses, including significant opportunities and areas for improvement indicated. I only received the OLR prep form after I returned to work in July 2021.

59. After hearing nothing from HR about my evaluation and the proposed Focus plan after my return to work on July 6, 2021, I had to reach out to HR myself and did so on July 22, 2021, when it became apparent to me that no one from HR was going to investigate my concerns and when it became clear that they intended to leave me under the supervision of Ashley Pringle.

60. On July 22, 2021, I filed a discrimination complaint with HR. I contacted Alyshia Williamson, an HR manager, who told me that she supported the write up that Ashley Pringle had given me on February 3, 2021.

61. Alyshia Williamson forwarded my discrimination complaint to a central investigation team who then launched an investigation but not until sometime in August 2021. In its position statement, Amazon accused me of escalating the matter which was not the case. Williamson herself escalated the matter to central HR.

62. In its position statement, Amazon says that it did not implement the performance improvement plan because I was out of work taking care of my mother who was sick.

63. I believe they did not implement the performance plan because they knew it was discriminatory and false and in violation of Amazon's HR policies.

64. Amazon continued to allow Ashley Pringle to be my manager even though they knew that she had made my work environment hostile and that she had discriminated against me in my evaluation and putting me a Focus plan. The investigation dragged on and I received no information about it until September 30, 2021.

65. Between July 6, 2021, when I returned and when I submitted my resignation, my peers took their cue from Ashley Pringle and also made my work environment hostile.

66. During one of my last conversations with Jay Marcello, sometime in September, he told me that he was trying to make a change with one of my directs and my business line.

67. I inquired about the reason. In response, he said to me since he'd been in Shipping and Delivery Services, he didn't feel I "fit in" and he told me that everyone else in SDS felt the same.

68. This is only one example of the disparaging remarks made to me between July 6, and when I resigned. No one did anything about this treatment of me, which made me miserable and was intended to make me leave.

69. I had already submitted my resignation for October 2, 2021, by the time I received an email from the Employee Relations Investigations Manager Jamie Burgains on the afternoon of September 30, 2021, that she had completed a thorough investigation and found violation of Amazon policy and standards of conduct. **Exhibit 2.**

70. I wrote Jamie Burgains back, saying this:

    > Good afternoon Jamie,
    >
    > Thank you for your investigation and notification of your findings. This has been an enormously stressful process for me all while trying to navigate and display an amicable and team demeanor as everything I do is on display. I have lost compensation and the possibility of potentially aligning to another role within the company as a result, not to mention my mental and physical decline. Additionally, this situation has led to my resignation with my last day being this Friday October 1st 2021. There is no way that I could find myself returning to this environment under the circumstances. What I am requesting at this point is to be generously compensated for the pain and suffering for what I've had to endure through this ordeal. I will wait your response or the response from HR. I have substantially more documented information of those that have had many complaints for inefficient performance, however, have been subsequently promoted this year.

    **Exhibit 2.**

71. Even after I informed Amazon in the email to Jamie Burgains that I had resigned due to the hostile work environment to which I had been subjected, they did nothing to try to talk me into withdrawing my resignation and they did not offer to move me to a different

manager or find a position within Amazon. I know that other employees in my position have been offered severance packages. They did not offer me a severance package in retaliation for raising complaints of discrimination and retaliation.

72. Instead, in their response to my charge of discrimination, they argued that I had not been harmed because they removed the Focus designation in my file and that the only thing Amazon should have done better was "paper" their "verbal feedback." They did not address the fact that after I resisted the unfair and discriminatory evaluation and implementation of a Focus plan, my concerns about Ashley Pringle's treatment of me were ignored and no investigation was done.

73. Leaving me under the supervision of Ashley Pringle after I complained that she had discriminated against me and allowing the employees with whom I worked to treat me disrespectfully and rudely was in retaliation for my complaining about the discriminatory treatment.

74. As a result, I lost my salary and benefits and my ability to progress in my career with Amazon which I believe was the result of discrimination based on my race, color, and/or age and retaliation when I complained about being treated differently.

The remainder of this page is left blank.

Respectfully submitted, this the 6th day of September 2023.

| | |
|---|---|
| /s/ VALERIE L. BATEMAN | /S/ JUNE K. ALLISON |
| Valerie L. Bateman | June K. Allison |
| NEW SOUTH LAW FIRM | NEW SOUTH LAW FIRM |
| 209 Lloyd Street, Ste 350 | 233 S. Laurel Avenue |
| Carrboro, North Carolina 27510 | Charlotte, NC 28207 |
| Tel: 919-810-3139 | Tel: 704-277-0113 |
| Fax: 919-823-6383 | Fax: 919-823-6383 |
| valerie@newsouthlawfirm.com | june@newsouthlawfirm.com |
| NC State Bar No. 13417 | NC State Bar No. 9673 |
| *Counsel for Plaintiff* | *Counsel for Plaintiff* |

## CERTIFICATE OF FILING AND SERVICE

This is to certify that the undersigned has this day electronically filed or caused to be filed the foregoing **AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification of the filing of the document to all counsel of record.

This 6th day of September 2023.

/s/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM